# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **MARGARET HANSON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:17-CV-161-VEH |
| | ) |
| **PRIME COMMUNICATIONS LP,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

This Fair Labor Standards Act ("FLSA") lawsuit was initiated by Plaintiff Margaret Hanson ("Ms. Hanson") on January 31, 2017. (Doc. 1). Pending before the Court is Defendant Prime Communications LP ("Prime")'s Motion To Compel Arbitration and To Stay the Action (Doc. 8) (the "Motion") filed on February 27, 2017. Defendant moves this Court to compel arbitration of Plaintiff's claims and "stay the case pending such arbitration as this will permit the Court to later enter a judgment to enforce the arbitration award if necessary." (Doc. 8 at 2, ¶ 3).

The Motion indicates within the case caption that it is unopposed and later clarifies that "Counsel for Prime has conferred with Plaintiff's counsel who does not oppose this motion." *Id.* at 2, ¶5. Moreover, the 14-day deadline for Ms. Hanson to

file any opposition under Appendix III of the Court's Uniform Initial Order (Doc. 4) ran on March 13, 2017, and nothing was filed. *Id.* at 23. For the reasons explained below, the Motion is due to be **GRANTED**.

## II. Ms. Hanson's Lack of Opposition

Ms. Hanson's lack of opposition to the Motion does not automatically mean that the Motion is due to be granted. As explained by Judge Steele in *Branch Banking and Trust Co. v. Howard*, No. 12–0175–WS–N, 2013 WL 172903, at *1 (S.D. Ala. Jan. 16, 2013), in the comparable situation of a non-movant's failure to oppose a motion to dismiss:

> As noted, Churchill and Howard elected not to be heard in response to BB & T's Amended Motion to Dismiss. Notwithstanding that omission, BB & T (as Rule 12(b)(6) movant) bears the initial burden of demonstrating that it is entitled to dismissal of the counterclaims. Churchill's and Howard's lack of response to the Rule 12(b)(6) Motion does not trigger the kneejerk granting of such Motion on an abandonment theory. *See Gailes v. Marengo County Sheriff's Dep't*, 2013 WL 81227, *5 (S.D. Ala. Jan. 4, 2013) ("the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss"). Rather, it remains BB & T's burden as movant to establish its entitlement to relief under Rule 12(b)(6). In light of these circumstances, the Court scrutinizes BB & T's Motion to Dismiss in accordance with the following legal standard: "the Court will review the merits of the [movant]'s position and, if it is clearly incorrect or inadequate to satisfy the [movant]'s initial burden, will deny the motion despite the [nonmovant]'s failure to respond. If, however, the [movant]'s presentation is adequate to satisfy its initial burden, the Court will not deny the motion based on arguments the [nonmovant] could have made but by silence elected not to raise." *Id.*

*Branch Banking*, 2013 WL 172903, at *1 (footnotes omitted).

## III.  Discussion

Prime bases its Motion on the grounds that Ms. Hansen signed a Mutual Agreement To Arbitrate Claims (hereinafter, the "Arbitration Agreement") stating that all disputes she has with Prime, "specifically including any disputes arising out of or relating to her employment, including claims under the Fair Labor Standards Act ("FLSA"), are subject to mandatory and binding arbitration." (Doc. 8 at 1, ¶ 1).

Attached to the Motion is the Arbitration Agreement in question. (Doc. 8-1).[1] The Agreement is expressly governed by the Federal Arbitration Act (the "FAA") (Doc. 8-1 at 5) and states in pertinent part:

> The Company and You agree that this Agreement will govern the resolution of all disputes, claims or any other matters <u>arising out of or relating to your employment relationship with the Company</u>. This Agreement includes any claims or disputes that You may have against the Company or any of its officers, directors, employees, agents, or parents, subsidiaries or affiliated companies, or any claims or disputes the Company may have against You. The Parties shall resolve all disputes arising out of the employment relationship in accordance with this Agreement.
>
> . . . .
>
> Except for the claims expressly excluded by this Agreement, both

---

[1] All page references to (Doc. __) correspond with the Court's CM/ECF numbering system.

you and the Company agree to arbitrate any and all disputes, claims, or controversies ("Covered claim") that the Company may have against you or that you may have against the Company which could be brought in a court arising out of your relationship with the Company, <u>including, but not limited to, all claims arising out of your employment with the Company</u> and the end of your employment with the Company. This Agreement includes, but is not limited to, claims under any state, federal, administrative statute or other law related to the Age Discrimination in Employment Act; Title VII of the Civil Rights Act of 1964, as amended; <u>the Fair Labor Standards Act</u>; the Family and Medical Leave Act[.]

(Doc. 8-1 at 5 (emphasis added)).[2] Because Ms. Hanson's two counts brought against Prime are for violations of the FLSA overtime and opt-in collective action provisions (Doc. 1 at 3-8 ¶¶ 11-46), her claims fall within the scope of "Covered Claims" under the Agreement.

Whether the Agreement is enforceable is a mixed question of federal and state law. *See Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) ("Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." (citing *Perry v. Thomas*, 482 U.S. 483, 107 S. Ct. 2520, 96 L. Ed. 2d

---

[2] "Claims **not** specifically covered by this Agreement are: (i) claims for workers' compensation benefits; (ii) claims for unemployment compensation benefits; (iii) claims based upon any current (successor or future) stock option plans, employee pension and/or welfare benefit plans if those plans contain some form of a grievance, arbitration, or other procedure for the resolution of disputes under the plan; and (iv) claims by law which are not subject to mandatory binding pre-dispute arbitration pursuant to the Federal Arbitration Act, such as claims under the Dodd Frank Wall Street Reform Act." (Doc. 8-1 at 6).

426 (1987))). Turning to considerations under the FAA first, the United States Supreme Court has explained:

> The Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3, 4. Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241, 84 L. Ed. 2d 158 (1985) (emphasis in original). Therefore, the FAA leaves very little room to challenge the validity of an arbitration agreement. *See, e.g., Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) ("The FAA thus 'embodies a liberal federal policy favoring arbitration agreements' and seeks 'to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation.'" (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (internal quotation marks omitted))).

Further, the Agreement is governed by the FAA pursuant to Alabama substantive standards. More specifically, "(1) there is a written agreement calling for

arbitration, and (2) the contract in which the arbitration agreement appears relates to a transaction involving interstate commerce." (Doc. 15 at 6); *see also Prudential Sec., Inc. v. Micro-Fab, Inc.*, 689 So. 2d 829, 832 (Ala. 1997) (same) (citing *Maxus, Inc. v. Sciacca*, 598 So. 2d 1376 (Ala. 1992)).

As demonstrated above, the writing prong has undoubtedly been met. Moreover, Ms. Hanson's Complaint confirms that the interstate commerce component is satisfied. *See, e.g.*, (Doc. 1 at 3, ¶12) ("During the three years preceding the filing of this Complaint, and currently, Defendant is an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. ¶ 203(s)(1)."); *Id.* at 3, ¶ 17 ("Plaintiff and all similarly situated store managers employed by Defendant were engaged in interstate commerce and/or the production of goods for interstate commerce while working for Defendant. Plaintiff's interstate commercial activity included, but was not limited to selling products that originated out of state or outside of the United States, and processing credit card and debit card transactions that crossed state lines.").

Finally, no ground for revocation of the Agreement arising under Alabama law is readily apparent from the record.[3] Therefore, Ms. Hanson's claims are subject to

---

[3] The Court notes that the Agreement also states: "The Parties agree all claims must be pursued in arbitration or on an individual basis only. By signing this Agreement, You and the Company waive Your right to commence, or be a party to, or a member of, any class, collective,

arbitration as mandated by the FAA.

## IV.    Conclusion

Accordingly, Prime's Motion's is **GRANTED**. This action is hereby **STAYED** and **ADMINISTRATIVELY CLOSED** pending completion of arbitration. Upon good cause shown by either side, the Court will grant a motion to reinstate this lawsuit as an active case.

**DONE** and **ORDERED** this the 17th day of March, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

representative or group action or claims, or to bring jointly any claim with any other person or entity except for the above pending cases." (Doc. 8-1 at 6). In *Walthour*, the Eleventh Circuit found that these types of waiver provisions, when applied to FLSA claims, were enforceable under the FAA. *See Walthour*, 745 F.3d at 1334 ("After examining the FLSA's text, legislative history, purposes, and these Supreme Court decisions, we discern no 'contrary congressional command' that precludes the enforcement of plaintiffs' Arbitration Agreements and their collective action waivers.").